UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | * | **NUMBER: 08-999** |
| vs. | * | |
| | * | **SECTION "C"(1)** |
| **6.83 ACRES OF LAND, MORE OR** | * | |
| **LESS, SITUATED IN PARISH OF ST.** | * | |
| **BERNARD, STATE OF LOUISIANA,** | * | **TRACT NOS. B100E-1, B100E-2,** |
| **and ALFREDA MELERINE PIZANI,** | * | **and B100** |
| **et al.** | * | |
| | * | |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### ORDER AND REASONS[1]

Before this Court is Defendants' Motion to Stay. (Rec. Doc. 71). Having considered the record, applicable law, and memoranda of counsel, Plaintiffs' Motion to Stay is GRANTED.

### Factual and Procedural Background

The United States of America ("United States") brought this civil action for the taking of property under its power of eminent domain on February 14, 2008. (Rec. Doc. 1). The property at issue in this suit consists of tracts of land purportedly belonging to the defendants in this case, Alfreda Melarine Pizani and Avis Melerine Juan. (Rec. Doc. 1-1 at 7).

The property was originally commandeered by St. Bernard Parish on October 24, 2005 (Rec. Doc. 59-4 at 1), in accordance with an Executive Order that authorized the parish president

---

[1]Katharine Williams, a third-year student at Tulane University Law School, contributed to the research and preparation of this order.

to commandeer or utilize private property in response to damage caused by Hurricane Katrina. (Rec. Doc. 59-2). Upon the declaration of a State of Emergency by a parish president, the Louisiana Homeland Security and Emergency Assistance and Disaster Act (La. R.S. 29:727, *et seq.*) authorized the commandeer or utilization of any private property necessary to cope with the local disaster, subject to any applicable requirements for compensation. (Rec. Doc. 59-2) *see also* La. R.S. 29:727(F)(4). This Executive Order also provided authority for the Parish president to grant rights of entry for the purpose of emergency hurricane protection work, including access, borrow, disposal, construction and any other required work. (Rec. Doc. 59-2). At the same time St. Bernard commandeered the property at issue here, it granted an irrevocable right to entry to these lands to the Lake Borgne Basin Levee District ("LBBLD") for its use in obtaining access for site investigation and borrow and construction. (Rec. Doc. 59-4 at 1). This grant was made with the understanding that the LBBLD would tender an Authorization for Entry for Access, Surveys, Soil Borings, Environmental Clearances, Borrow and Construction to the United States Army Corps of Engineers, the Department of the Army, its agents, employees, and contractors to enter upon these lands to perform surveys and investigations. *Id.*

On November 5, 2005, St. Bernard and the LBBLD entered into a "Cooperation Agreement" with the United States of America, represented by the U.S. Army Corps of Engineers ("USACE").(Rec. Doc. 59-1 at 3). This agreement designated St. Bernard and LBBLD as "Public Sponsors" obligated to provide USACE "right of entry to all lands, easements, and rights-of-way, including suitable borrow and dredged or evacuated material disposal areas" as may be determined necessary by USACE. *Id.* This Cooperation Agreement was modified by amendment on December 1, 2005. (Rec. Doc. 59-7 at 1). The Amendment

states that the "Public Sponsors shall provide right of entry to all lands, easements, and rights-of-way, including suitable borrow and dredged or excavated material disposal areas ("LERD")" deemed to be necessary for the levee project. (Rec. Doc. 59-7 at 4).

The Amendment states that the United States, in the name of the Public Sponsors, would identify and provide just compensation to the owners of a compensable interests in private LERD. (Rec. Doc. 59-7 at 6). USACE agreed to compensate affected property owners, either by negotiation of a mutually agreed-to amount or through federal condemnation procedures so that the Court could determine compensation[2]. (Rec. Doc. 59-1 at 2). After the construction effort was completed and the acquisition and eminent domain proceedings finalized, the United States would transfer and assign all of the private LERD acquired in the name of the United States to the Public Sponsors. (Rec. Doc. 59-7 at 6). USACE attempted negotiations with Pizani, as contemplated by the Cooperation Agreements, but these negotiations were not successful. (Rec. Doc. 59-1 at 4).

On July 13, 2006, the USACE provided defendants with the keys to gate locks that had been placed on the security fence surrounding the borrow pit, as construction of the pit was completed on May 24, 2006 and the borrow pit was no longer needed. (Rec. Doc. 72-1 at 1). The defendants received no compensation for the taking of their property within the year of return of their property, and sued St. Bernard Parish and LBBLD in the 34th District Court for the Parish of St. Bernard, alleging an inverse taking arising from the commandeering. (Rec. Doc. 59-8).

---

[2]The Amendment provided that the United States would obtain a deed or servitude agreement, in the name of the Public Sponsors, for those interests described in the Commandeering Order, and that, if unable to obtain free and unencumbered title on behalf of the Public Sponsors or to reach an agreement with the interest owners in the private LERD, the United States would obtain such interests in the name of the United States, through the exercise of its eminent domain authority. (Rec. Doc. 59-7 at 6).

On February 14, 2008, the United States initiated this condemnation case, "in order to maintain its commitment to the Parish and LLBLD to compensate landowners." (Rec. Doc. 59-1 at 4). The original Declaration of Taking acquired temporary easements over two tracts comprising 6.83 acres, and $59,400 was deposited with the court as estimated just compensation *Id.* An Amended Declaration of Taking was filed on September 7, 2010. (Rec. Doc. 42). The estate taken in the original Declaration of Taking was amended from a temporary easement to a permanent fee estate, and an additional deposit of $74,600 was made, increasing the estimate of just compensation to a total of $134,000. *Id.* The defendants withdrew these funds from the Registry of the Court. (Rec. Doc. 58). The defendants base this Motion to Stay the condemnation action on their argument that the state court hearing their inverse condemnation suit against St. Bernard Parish and the LBBLD has prior exclusive jurisdiction over the property at issue, (Rec. Doc. 71-1 at 3) and that the damages due for the 2005 commandeer of the property must be calculated "prior to attempting to quantify the damages for the 2010 taking which took Defendants' vested rights for the 2005 damages." (Rec. Doc. 80 at 2)[3]. The United States opposes this Motion, claiming that the prior-exclusive-jurisdiction rule does not apply in this matter: they argue either that the United States took the property in question before the state suit was filed, meaning that the state court never had jurisdiction over the property[4], or alternatively,

---

[3] The parties disagree on the appropriate date of valuation. (Rec. Docs. 59 and 72). The United States and the defendants dispute whether the Court should calculate just compensation as of the Corps' entry onto the property at the time of commandeering by St. Bernard Parish, or as of the date of filing of the Declarations of Taking. (Rec. Doc. 59-1 at 2).

[4] The United States bases this argument on *United States v. Dow*, 357 U.S. 17 (1958), in which the Supreme Court held that where the federal government takes legal possession prior to the filing of a Declaration of Taking, the date of possession is the proper date on which to determine value. (Rec. Doc. 59-1 at 2). This reasoning was also applied by the Court of Federal Claims in *Georgia-Pacific Corp., v. United States*, 568 F.2d 1316 (1978). These cases involved situations in which the United States acquired property through direct condemnation, in which it takes property by entering into physical possession of the property without authority of a court order (as opposed to

that the state and federal suits should be allowed to proceed on simultaneously: the state court would value the property to determine just compensation for the 2005 taking by St. Bernard, and this Court would value the property to determine just compensation for the 2008 taking by the United States. (Rec. Doc. 74 at 4).

## Law and Analysis

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. *National Food & Beverage Co., Inc., v. United States*, 96 Fed. Cl. 258, 263 (2010), *citing Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Whether and how to stay proceedings is within the sound discretion of the trial court, but this discretion is not un-bounded. *Id., citing Cherokee Nation of Okla. v. United States*, 124 F.3d, 1413, 1416 (Fed. Cir. 1997). A stay that is immoderate or indefinite may be an abuse of discretion. *Id.* The proponent of a stay bears the burden of establishing its need. *National Food* 96 Fed. Cl. at 263, *citing Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945

---

indirect condemnation, in which it institutes condemnation proceedings under statutory authority). *Dow*, 357 U.S. at 21. However, in both *Dow* and *Georgia-Pacific*, the government took possession of the property at issue and maintained possession continuously until Declarations of Taking were filed.

Those cases dealt primarily with the issue of which owner would be entitled to compensation if the government took possession at one date (when one owner held the property in question), but filed the Declaration of Taking at a later date (when a different owner had purchased the subject property). In this suit, the United States may have entered into possession of the property at an earlier date, but it returned possession of the land in July 2006. (Rec. Doc. 72-1 at 1). It did not maintain continuous possession of the land, and there has not been a change of ownership.

At issue in this claim is the taking that occurred when the Declaration of Taking was filed in 2008. *See National Food & Beverage Co., Inc., v. United States*, 96 Fed. Cl. 258, 268 (2010) ("There are no allegations that the United States was in possession of or used National Food's property after September 30, 2007. To link actions that concluded three years ago to a condemnation action filed in 2010 misapprehends the nature and scope of a direct condemnation.").

(1997). To justify suspending the regular course of litigation, the proponent must make a clear case of hardship or inequity in being required to go forward if there is even a fair possibility that the stay for which he prays will work damage to someone else. *Id., citing Landis*, 299 U.S. at 255.

Defendants have submitted this Motion to Stay, and they have the burden of establishing a need to justify granting it. However, since there does not seem to be "a fair possibility that the stay for which [they] pray will work damage" to any other parties, they are not required to make a clear case of hardship or inequity. *See Landis, supra.* They base their Motion to Stay these federal proceedings on a long-standing jurisprudential tenet: the "prior-exclusive-jurisdiction rule."(Rec. Doc. 71-1 at 3).

The United States has not argued that it will suffer any injury as a result of the granting of this Motion to Stay, nor will the stay this court issues be indefinite: this federal action will resume after the conclusion of the defendants' state action.

At this time, there are parallel state and federal court cases that concern the same parcels of property. The just compensation claims against St. Bernard Parish and the LBBLD were filed on July 7, 2007. (Rec. Doc. 59-8). This condemnation action was filed on February 4, 2008. (Rec. Doc. 1).

The Louisiana Constitution provides the basis for the defendants' state court claim, stating that property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. La. Const. art. I, § 4. That suit is based entirely on state law, does not implicate any question of federal law and does not include diverse parties - the state court has exclusive

jurisdiction over that claim. *See* 28 U.S.C. §§ 1331, 1332, *see also Olivier Plantation LLC. v. St. Bernard Parish,* 744 F.Supp.2d. 575, 584-585 (E.D. La. 2010) (A determination of whether the Parish's actions constituted a taking under the "Louisiana Constitution does not implicate any issues of federal law, and thus, does not provide a basis for this Court to exercise federal subject matter jurisdiction.").

When the United States filed this Complaint in Condemnation (Rec. Doc. 1), this Court obtained subject matter jurisdiction over the federal condemnation proceedings. *See* 28 U.S.C. § 1358 ("The district courts shall have original jurisdiction of all proceedings to condemn real estate for the use of the United States of its departments or agencies"); Fed.R.Civ.P. 71.1. On filing a declaration of taking and depositing the amount of estimated compensation stated in the declaration, title to the estate or interest specified in the declaration vests in the Government; the land is condemned and taken for the use of the Government; and the right to just compensation for the land vests in the persons entitled to the compensation. 40 U.S.C. § 3114(b)(1)-(3). While the United States argues that it actually took possession the property in question at an earlier date, that issue is the subject of the plaintiff's Motion for a Determination of the Appropriate Date of Valuation and will not be resolved at this time. (Rec. Doc. 59). The statute that authorizes the use of condemnation actions states that title vested in the United States at the time the Complaint in Condemnation was filed and the deposit of estimated compensation was made.

This situation implicates the "prior-exclusive-jurisdiction rule," which provides that when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed

by any other court.[5] *United States v. Sid-Mars Restaurant & Lounge, Inc.,* 644 F.3d 270, 274-75 (5th Cir. 2011), *citing* 13F Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3631 (3rd ed. 2009), *see also Mandeville v. Canterbury*, 318 U.S. 47, 63 S. Ct. 472, 87 L. Ed. 605 (1943). The court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other. *Sid-Mars* at 275, *citing Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). The primary reason for this rule is to prevent conflicts between federal and state courts. *Sid-Mars* at 275, *citing Mandeville*, 318 U.S. at 49. In actions *in rem*, where the jurisdiction of a state court has first attached, a federal court of a concurrent jurisdiction is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction, control of the *res* being essential to the full exercise of jurisdiction. *Byrd-Frost, Inc. v. Elder*, 93 F.2d 30, 32 (5th Cir. 1937).

The state court obtained jurisdiction over the property in question before this Court did. This Court finds the reasoning in Judge Fallon's Order (Case No. 09-3581, Rec. Doc. 83) persuasive. In that case, Judge Fallon chose to stay the federal proceedings in a similar case until

---

[5]The parties do not appear to dispute that both the state court inverse condemnation claims and the federal condemnation proceedings are *in rem* proceedings. *See* Order, *Olivier Plantation v. St. Bernard*, 09-cv-3581 (Rec. Doc. 83 at 11, n. 1). *See also United States v. Sid-Mars Restaurant & Lounge, Inc.*, 644 F.3d 270, 285-289 (5th Cir. 2011)(Dennis, J., dissenting) (In dicta in his dissent, Judge Dennis states: "it is undisputed that both this federal condemnation suit and the state court inverse condemnation action are *in rem* proceedings. In the absence of explicit Louisiana case law or commentary to that effect regarding inverse condemnation suits, however, I will set forth my reasons for so concluding." *Sid-Mars* at 285. Judge Dennis goes on to state that: "[a]lthough I have not founds cases explicitly declaring that inverse condemnation suits are *in rem* proceedings, I conclude that they should be so considered because the United States Supreme Court and Louisiana's highest court have held that they are substantially equivalent to condemnation actions and essential to the self-executing constitutional protection of private property owners from governmental takings without just compensation." *Id* at 286. Judge Dennis concludes that "the inverse condemnation action arising out of the self-executing nature of the United States and Louisiana Constitutions affords Sid-Mar's [sic] the same protection to the full extent of their loss as would be provided them in a statutory condemnation action brought by the state or any governmental entity in an *in rem* proceeding." *Id.* at 287.

the resolution of the state court proceedings. *Olivier Plantation, LLC, et al. v. St. Bernard Parish*, 09-cv-3581 (E.D. La. 2012). Judge Fallon applied the prior-exclusive-jurisdiction rule to justify staying the federal proceedings, but did not entirely strip his Court of jurisdiction over the property. To avoid conflict with the state court, he chose to stay the proceedings until completion of the state court case, and thereafter resolve the issues raised in the federal claim. (Case No. 09-3581, Rec. Doc. 83 at 12).

If these cases proceed simultaneously, this Court will have to determine the date of the federal taking, to establish the date upon which the property should be valued. (Rec. Doc. 59). If this Court determines that the date of the Federal taking was, as the United States argues, the same date as the taking by St. Bernard, both the state and federal courts will use the same valuation date to determine just compensation. *See, e.g.* 40 U.S. § 1334(c)(1) ("Compensation shall be determined and awarded in the proceeding and established by judgment. The judgment shall include interest, in accordance with section 3116 of this title, on the amount finally awarded as the value of the property as of the date of taking and shall be awarded from that date to the date of payment."). This could lead to a situation in which the same property, taken on the same date but by different parties, could be valued differently in state and federal court. To allow these parallel cases to proceed simultaneously would create the possibility of conflict between courts of different sovereigns, the specific kind of conflict that the prior-existing-jurisdiction rule is meant to prevent.[6]

---

[6]"[T]o prevent unseemly conflicts between the federal and state courts and to prevent the impasse which would arise if the federal court were unable to maintain its possession and control of the property, which are indispensable to the exercise of the jurisdiction it has assumed." *Mandeville v. Canterbury*, 318 U.S. 47, 49, 63 S.Ct. 472, 87 L. Ed. 605 (1943)

## **CONCLUSION**

Accordingly,

IT IS ORDERED that Defendant's Motion to Stay (Rec. Doc. 71) is GRANTED. These proceedings will be stayed until the conclusion of the defendants' state court claims.

New Orleans, Louisiana, this 5th day of April, 2013.

                                        **HELEN G. BERRIGAN**

                                        **UNITED STATES DISTRICT JUDGE**